Goriune Dudukgian (SBN 218714)
**California Justice Project**
225 S. Lake Ave., Suite 300
Pasadena, CA 91101
Tel: (626) 432-7243
Fax: (866) 813-8645
Email: gdudukgian@cjp-law.com

Attorney for Plaintiff S.G.P.

Angela Gordon (SBN 219790)
David Salazar (SBN 310949)
Fagen Friedman & Fulfrost, LLP
6300 Wilshire Blvd., Suite 1700
Los Angeles, CA 90048
Tel: (323) 330-6300
Fax: (323) 330-6311
Email: agordon@f3law.com
Email: dsalazar@f3law.com

Attorneys for Defendant Tehachapi Unified School District

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.G.P., a minor, by and through her parent and guardian ad litem, CLARISSA PARKS,<br><br>Plaintiff,<br><br>vs.<br><br>TEHACHAPI UNIFIED SCHOOL DISTRICT,<br><br>Defendant. | Case No. TBD<br><br>**JOINT PETITION FOR APPROVAL OF MINOR'S COMPROMISE** |

Plaintiff S.G.P., a minor, by and through her parent and guardian ad litem, Clarissa Parks, and Defendant Tehachapi Unified School District ("TUSD") hereby

JOINT PETITION FOR APPROVAL OF MINOR'S COMPROMISE - 1

jointly petition this Court pursuant to Federal Rule of Civil Procedure 17(c) and Local Rule 202(b) for approval for the parties' proposed settlement of Plaintiff's claims arising under the Individuals with Disabilities Education Act ("IDEA"), the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and any other known or unknown claims arising out of Plaintiff's educational program.[1] This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1343.[2]

## FACTUAL BACKGROUND[3]

Plaintiff was born on September 4, 2011 and is currently 10 years old. She resides with her parents, Andrew and Clarissa Parks (hereinafter "Parents"), in Tehachapi, California, within the boundaries of TUSD and the Eastern District of California.

Plaintiff has been diagnosed with Rett Syndrome. Rett Syndrome is a rare genetic neurological disorder which occurs almost exclusively in girls and leads to severe impairments, including the loss of functional use of the hands, slowed brain and head growth, loss of mobility, breathing irregularities, seizures, and intellectual disability. Apraxia — the inability to perform a voluntary motor movement despite having the

---

[1] A true and correct copy of the parties' Final Settlement Agreement and Release is attached to the Declaration of Goriune Dudukgian as Exhibit 2.

[2] There is no pending lawsuit between the parties in this Court. When "legal proceedings have not been commenced in this court regarding the underlying dispute," the court construes a joint filing seeking approval of a minor's compromise as *both* "a complaint . . . and a petition for approval of minor's compromise." *P.R. v. Fresno Unified Sch. Dist.*, No. 1:19-cv-00220-DAD-BAM, 2019 U.S. Dist. LEXIS 46346, at *2 (E.D. Cal. Mar. 20, 2019).

[3] These background facts are supported by the declaration submitted by Plaintiff's mother, Clarissa Parks.

cognitive intent — is perhaps the most severely disabling feature of Rett syndrome, interfering with all body movements, including speech. Rett Syndrome is *not* a degenerative disorder. Barring illness or complications, children diagnosed with Rett Syndrome are expected to survive into adulthood.

As a result of apraxia from Rett Syndrome, Plaintiff is unable to feed herself, stand unsupported, walk, dress, or independently meet any of her personal care needs. She does not have the ability to speak and is nonverbal. However, according to Plaintiff's treating doctors, her condition has now stabilized, and she is expected to make progress in reacquiring some of her delayed skills, including communication skills.

Plaintiff has been eligible at all relevant times to receive special education and related services under the IDEA, under the eligibility categories of "Multiple Disability" and "Orthopedic Impairment." Plaintiff's current placement is in a special day class ("SDC") for students with moderate to severe disabilities.

## PLAINTIFF'S CAUSES OF ACTION

On March 1, 2022, Parents filed a request for a due process hearing against TUSD with the California Office of Administrative Hearings (hereinafter "the Special Education Action").[4] Parents alleged that TUSD had failed to provide Plaintiff a free appropriate public education ("FAPE") during the two years preceding their complaint as a result of

---

[4] A true and correct copy of the due process complaint is attached to the Declaration of Goriune Dudukgian as Exhibit 1.

JOINT PETITION FOR APPROVAL OF MINOR'S COMPROMISE - 3

the following alleged violations of the IDEA:[5]

1. TUSD denied Plaintiff a FAPE during the COVID-related school closures during the 2019-2020 and 2020-2021 school years by failing to develop and offer service delivery options that were appropriately tailored to Plaintiff's individual needs and designed to ensure equitable and meaningful access to the distance learning opportunities that the District was providing to its non-disabled students.

2. TUSD denied Plaintiff a FAPE in the two years prior to the filing of the Special Education Act by materially failing to implement her operative Individualized Education Programs ("IEP").

3. TUSD denied Plaintiff a FAPE by failing to review Plaintiff's IEP at the times and intervals required under the IDEA.

4. TUSD denied Plaintiff a FAPE during the 2020-2021 and 2021-2022 school years by failing to offer IEPs that were reasonably calculated to enable Plaintiff to make progress appropriate in light of her circumstances.

5. TUSD denied Plaintiff a FAPE by failing to make clear offers in the August 31, 2020 and August 31, 2021 IEPs.

Meanwhile, Parents, through their counsel, also notified TUSD of their intention to pursue civil claims for damages on behalf of Plaintiff for alleged violations of the ADA and Section 504 (hereinafter "the Civil Action"). *See* Dudukgian Decl. at ¶7. More

---

[5] Parents' Due Process Complaint more fully sets forth the facts and circumstances giving rise to Plaintiff's various IDEA claims and is incorporated by reference herein.

JOINT PETITION FOR APPROVAL OF MINOR'S COMPROMISE - 4

specifically, Parents alleged that TUSD had violated the ADA's "effective communication" requirements by failing to provide Plaintiff with a working communication device during the 2020-2021 school year, and by failing to consistently use the device during the 2021-2022 school year.[6] Parents further alleged that TUSD violated the ADA and Section 504 by failing to provide Plaintiff with necessary services, accommodations, and supports during distance learning – including but not limited to an in-person aide – denying Plaintiff an equal opportunity to participate in and enjoy the benefits of TUSD's services, programs, and activities, and meaningful access to the benefits of a public education.[7]

---

[6] Under the regulations implementing Title II of the ADA, governmental entities must "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.260(a)(1). This includes the duty to "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." *Id.* at § 35.260(b)(1).

[7] Section 504 provides, in pertinent part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Title II of the ADA similarly provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Although there are some minor differences between Section 504 and the ADA, "the elements of a valid Title II claim do not differ in any material sense from those of a valid section 504 claim," and the two are often addressed together by courts. *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1203-04 (9th Cir. 2016). The focus under both statutes is "whether disabled persons were denied meaningful access to state-provided services," and both statutes require "*reasonable* modifications necessary to correct for instances in which qualified disabled people are prevented from enjoying 'meaningful access' to a benefit because of their disability." *Mark H. v. Lemahieu*, 513 F.3d 922, 937 (9th Cir. 2008) (emphasis in original, citations omitted).

TUSD disputes Plaintiff's claims in both the Special Education Action and Civil Action.

At an OAH mediation on April 6, 2022, the parties began negotiating a global settlement of all claims – including the claims asserted in the Special Education Action and Civil Action – in an effort to avoid litigation on these issues. While a settlement was not reached at the mediation, the parties continued to negotiate in good faith towards a comprehensive settlement. A claims representative from Self-Insured Schools of California ("SISC") was also involved in these negotiations. The negotiations took approximately 2.5 months.

The parties eventually entered into a Final Settlement Agreement and Release ("the Agreement") resolving all of Plaintiff's claims, contingent on: (1) approval of the Agreement by TUSD's governing board; and (2) this Court's approval of the minor's compromise.[8] The Agreement was ratified by TUSD's board on June 28, 2022. Thus, all that is left now is for this Court to approve the minor's compromise.

## **PROPOSED SETTLEMENT TERMS**

The Agreement fully resolves all known and unknown claims arising from or related to Plaintiff's educational program through June 28, 2022,[9] in exchange for the

---

[8]   See Agreement at ¶8.

[9]   See id. at ¶¶ 6, 19-20, 31.

following settlement terms:[10]

1. TUSD will pay Plaintiff damages in the amount of $15,000, subject to and payable consistent with this Court's approval of the minor's compromise.[11]

2. TUSD will fund speech and language and augmentative and alternative communication ("AAC") assessments of Plaintiff, to be conducted by a non-public agency ("NPA") selected by Parents.[12] The monetary value of this settlement term is approximately $2,750.[13]

3. TUSD will fund up to 25 hours of training of all District staff who work with Plaintiff, as well as training for Parents, on setting up and using Plaintiff's AAC device. This training will be provided by an NPA selected by Parents at a rate not to exceed $150 per hour. All staff who work with Plaintiff will be required to attend the training.[14] The monetary value of this settlement term is $3,750.

4. TUSD will fund a bank of 100 hours of compensatory education services for Plaintiff to be provided by an NPA selected by Parents.[15] The monetary value of this

---

[10] The following is only a *summary* of the parties' settlement terms and is not intended to modify, in any way, the actual terms as stated in the Agreement.

[11] See Agreement at ¶8.

[12] See id. at ¶9.

[13] See Dudukgian Decl. at Ex. 3 (rate sheet of NPA Dynamic Education Services, Inc., one of the few NPAs that serves students in Tehachapi).

[14] See id. at ¶10.

[15] See id. at ¶11.

settlement term is between $10,000 and $16,750, depending on the type of compensatory services accessed by Plaintiff.[16]

5. TUSD will amend Student's IEP to provide at least 50 minutes of mainstreaming time per day, outside of lunch, recess, or P.E.[17] The monetary value of this settlement term is not quantifiable. However, this was one of the most important aspects of the settlement for Parents, because it will ensure that Plaintiff is included with her non-disabled peers for a greater part of the school day moving forward.

6. TUSD will contract with a mutually agreeable NPA to provide Plaintiff with aide support during school days, at a rate not to exceed $85 per hour. In addition, TUSD will contract with the NPA to provide 20 hours per year of behavior supervision services. These NPA aide and supervision services funded will be provided to Plaintiff for a minimum period of two years, in lieu of the aide support and supervision services that were previously provided to Plaintiff through her IEP.[18] The monetary value of this settlement term is approximately $216,000.[19]

---

[16] *See* Dudukgian Decl. at Ex. 3.

[17] *See* Agreement at ¶12.

[18] *See id.* at ¶13.

[19] Plaintiff's IEP provides for 377 minutes per day, or approximately 31 hours per week, of aide services (called "intensive individualized services" in the IEP). Given a 40-week school year, this equates to 2,480 hours of NPA aide services, at a maximum cost of $210,800, that will be provided to Plaintiff under the Agreement. Given a typical hourly rate of $130 for behavior supervision services, that is an additional $5,200 in services that will be funded for Plaintiff's benefit under the Agreement.

JOINT PETITION FOR APPROVAL OF MINOR'S COMPROMISE - 8

7. TUSD will reimburse Plaintiff's attorney's fees in the amount of $25,000 for the Special Education Action, and will pay up to an additional $5,000 for attorney's fees and costs incurred in obtaining approval of the minor's compromise.[20] These attorney's fees were negotiated separately by the parties and will **not** be deducted from Plaintiff's award. *See* Dudukgian Decl. at ¶14.

## DISCLOSURE OF ATTORNEY'S INTEREST

When a minor seeking the Court's approval of a minor's compromise is represented by an attorney, Local Rule 202(c) requires the attorney to disclose:

> [B]y whom and the terms under which the attorney was employed; whether the attorney became involved in the application at the instance of the party against whom the causes of action are asserted, directly or indirectly; whether the attorney stands in any relationship to that party; and whether the attorney has received or expects to receive any compensation, from whom, and the amount.

Here, as detailed in the declaration of counsel filed concurrently with this petition, Plaintiff is represented by Goriune Dudukgian of the California Justice Project in both the Special Education Action and the Civil Action. Mr. Dudukgian was contacted and retained directly by Parents, who were previously clients in another matter in 2018. Mr. Dudukgian did not become involved in these cases, either directly or indirectly, at the instance of any party against whom the causes of action are asserted. Mr. Dudukgian is not related to any party in this case. Finally, Mr. Dudukgian has not received any compensation, to date, from Parents or from any other source for services rendered in

---

[20] *See* Agreement at ¶15.

JOINT PETITION FOR APPROVAL OF MINOR'S COMPROMISE - 9

relation to the Special Education Action or the Civil Action. Mr. Dudukgian does not expect to receive any compensation for these matters other than what is specified in the Agreement.

**FAIRNESS TO MINOR**

Federal Rule of Procedure 17(c) imposes on district courts the responsibility to safeguard the interests of litigants who are minors.[21] *See Robidoux v. Rosengren,* 638 F.3d 1177, 1181 (9th Cir. 2011). "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Id.* (quoting *Dacanay v. Mendoza*, 573 F.3d 1075, 1080 (9th Cir. 1978)); *see also* L.R. 202(b) ("No claim by or against a minor or incompetent person may be settled or compromised absent an order by the Court approving the settlement or compromise.").

In evaluating a proposed settlement, a district court should "limit the scope of [its] review to the question whether the net settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Id.* at 1181-82. This evaluation should be performed "without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel–whose interests the district court has no special duty to safeguard." *Id.* at 1182. "If the net recovery of

---

[21] Similarly, under California Probate Code § 3500, where "a minor has a disputed claim for damages, money, or other property and does not have a guardian of the estate," the minor's parents have the authority to compromise the claim, subject to approval by the court. The procedural and substantive requirements for a minor's compromise under state law are set forth in California Probate Code §§ 3600 *et seq.*

each minor plaintiff under the proposed settlement is fair and reasonable, the district court should approve the settlement as presented, regardless of the amount the parties agree to designate for adult co-plaintiffs and attorney's fees." *Id.*

Here, the parties jointly recommend the approval of the proposed settlement as fair and reasonable and in the best interests of the Plaintiff. As detailed above, the total monetary value of the proposed settlement to the Plaintiff (excluding the attorney's fees paid to Plaintiff's counsel) is substantial, totaling more than $245,000. This includes the payment of $15,000 in damages for settlement of the Civil Action; and the funding of various assessments, services, staff training, compensatory education, along with the amendment of Plaintiff's IEP to provide for additional mainstreaming opportunities, for settlement of the Special Education Action.

The proposed settlement is consistent with the recovery obtained in similar cases in California. For example, in *I.H. v. Oxnard School District*, 2021 U.S. Dist. LEXIS 74067 (C.D. Cal. Apr. 13, 2021), the court approved a minor's compromise of claims arising under the IDEA, ADA, and Section 504 that provided for a net payment of $20,000 to the student, along with "420 hours of individual reading instruction, 120 hours of individual writing instruction, 125 hours of individual math instruction, 25 hours of individual study skills counseling, and 35 hours of individual speech and language services."[22] *Id.* at *2.

---

[22] As in this case, the settlement in *I.H.* provided for these educational services (except for the speech and language services) to be delivered by NPAs. *See I.H.*, 2021 U.S. Dist. LEXIS

In *J.S. v. Santa Clara County Office of Education*, 2019 U.S. Dist. LEXIS 220042 (N.D. Cal. Dec. 20, 2019), the parties reached a settlement, prior to litigation, in a case involving both IDEA and damages claims by a minor student against a County Office of Education and local school district.[23] *See id.* at *1-2. The court approved a settlement which provided a net payment of $12,500 to the plaintiff, of which $5,500 "was intended to settle the tort claim" and the remainder was "intended to cover J.S.'s qualified educational expenses until those funds are depleted, or through June 30, 2021, whichever occurs first." *Id.* at *3. The court found that the settlement was "fair, reasonable and proper" and "commensurate with settlements approved in similar cases." *Id.* at *5. The court also recognized that there was "some value in the parties' early resolution of this matter, without incurring the additional time and expense of potentially protracted litigation in which the nature and extent of J.S.'s claimed injuries likely would have been challenged by SCCOE and the District." *Id.*

Another similar case for comparison is *C.F. v. Sam Lorenzo Unified School*

---

74067, at *3.

[23] The IDEA claim alleged that the defendants had denied the student, J.S., a FAPE during the 2018-2019 school year "by, among other things, failing to provide J.S. with a timely educational placement or to offer placement in the least restrictive environment; to timely convene an [IEP] team meeting, or to implement his IEP; to offer adequate goals, services and assistive technology; to conduct a behavioral assessment; and to make a clear written offer." *J.S.*, 2019 U.S. Dist. LEXIS 220042, at *2. The student's tort claim sought "damages arising from a January 31, 2019 incident in which an SCCOE employee allegedly verbally and physically assaulted J.S." *Id.* Had the parties not settled, the student also intended to assert additional claims under the ADA, Section 504, the California Unruh Civil Rights Act, and claims under the Fourth, Eight, and Fourteenth Amendments. *See id.* at *3.

JOINT PETITION FOR APPROVAL OF MINOR'S COMPROMISE - 12

*District*, 2016 U.S. Dist. LEXIS 115870 (N.D. Cal. Aug. 29, 2016). There, the court approved a minor student's settlement of IDEA claims after the school district deemed the student ineligible to receive special education services. *See id.* at *1. The proposed settlement called for a net payment of $10,000 to the student for obtaining educational services. *See id.* at *4.

In *R.Q. v. Tehachapi Unified School District*, 2020 U.S. Dist. LEXIS 186402 (E.D. Cal. Oct. 7, 2020), the court approved a minor's compromise in a case involving TUSD. *See id.* at *7, *aff'd*, 2020 U.S. Dist. LEXIS 201007 (E.D. Cal. Oct. 27, 2020) (adopting magistrate's findings and recommendations in full). The student had appealed the ALJ's decision in the underlying due process case, and also sought "damages related to [TUSD's] refusal to draft a Behavior Intervention Plan to address the boy's behavior that interfered with his ability to access his education." 2020 U.S. Dist. LEXIS 186402, at *4. In the proposed settlement, TUSD agreed to pay $34,000 for 12 hours of compensatory education, reimbursement for costs incurred during the time the child did not attend school, and "as compensation for harm suffered by the boy." *Id.* at *5. The court found that the proposed settlement was fair, reasonable, and in the best interests of the child." *Id.* at *7.

As for cases asserting only civil rights claims for damages against a school district, judges in the Eastern District of California approved settlements providing for the net payment of $21,250 in *P.H. v. Tehachapi Unified School District*, 2018 U.S. Dist. LEXIS 11671 (E.D. Cal. Jan. 23, 2018), $24,750 in *T.L. v. Southern Kern Unified School District,* 2019 U.S. Dist. LEXIS 117517 (E.D. Cal. July 15, 2019), $25,713.53 in *S.V. v.*

*Delano Union Elementary School District*, 2019 U.S. Dist. LEXIS 108107 (E.D. Cal. June 27, 2019), and $11,685.15 in *K.B. v. City of Visalia*, 2016 U.S. Dist. LEXIS 132612 (E.D. Cal. Sept. 27, 2016). It is important to note, however, that each of these settlements was approved before the Supreme Court's recent decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1571-76 (2022), which held that emotional distress and other types of non-economic damages that are not compensable in contract actions are not recoverable under Section 504.[24] The *Cummings* decision reduces the expected value of Plaintiff's damages claims, because her injuries were primarily mental and emotional and, if the case was litigated, TUSD would likely contest the nature, extent, and causation of Plaintiff's injuries.

Finally, the early resolution of this case also benefits Plaintiff. Rather than having to wait a year or two for her causes of action to be litigated,[25] the settlement funds will be *immediately* available to Plaintiff, which will enable her to access vital educational assessments and services. Plaintiff will also begin receiving an additional 50 minutes per day of mainstreaming time at the start of the 2022-2023 school year, which is well before a decision from OAH would be expected if the parties were to litigate the Special

---

[24] Title II of the ADA, in turn, incorporates the "remedies, procedures, and rights" of the Rehabilitation Act. 42 U.S.C. § 12133. The Supreme Court has therefore held that the remedies of Title II and the Rehabilitation Act are "coextensive." *Barnes v. Gorman*, 536 U.S. 181, 185 (2002).

[25] Because the IDEA requires exhaustion of administrative remedies, Plaintiff could not even *begin* litigating the Civil Action until the litigation of the Special Education Action has concluded. *See* 20 U.S.C. § 1415(l).

JOINT PETITION FOR APPROVAL OF MINOR'S COMPROMISE - 14

Education Action. Finally, as a result of early resolution, the parties have not yet incurred significant costs in this case, thereby allowing for a greater award to Plaintiff.

## **DISTRIBUTION OF SETTLEMENT PROCEEDS**

In light of Plaintiff's disability and familial economic factors, she is currently on several public assistance programs. Plaintiff is a beneficiary of Medi-Cal, California's Medicaid program administered through the Department of Health Care Services. She also receives services through Kern Regional Center, which provides services to individuals with developmental disabilities under the auspices of the Department of Developmental Services. It is anticipated that Plaintiff will continue to receive public assistance and will remain a beneficiary of these programs even after she reaches the age of majority.

Given Plaintiff's age and disability, her net recovery in this matter, her current, ongoing and future disability-related needs, and concerns about the discontinuation of her critical public benefits, Plaintiff, through her guardian ad litem, requests that the Court approve the disbursement of the settlement proceeds of $15,000 into a CalABLE account,[26] for use on current, ongoing, and/or future "qualified disability expenses."[27]

The California Achieving a Better Life Experience (CalABLE) Program is a State-

---

[26] Under California Probate Code § 3611(d), where the remaining balance of the money to be paid does not exceed $20,000, the court may order that "that all or any part of the money be held on any other conditions the court in its discretion determines to be in the best interest of the minor . . . ."

[27] The term "qualified disability expenses" is defined in 26 U.S.C. § 529A(e)(5).

JOINT PETITION FOR APPROVAL OF MINOR'S COMPROMISE - 15

sponsored program created under 26 U.S.C. § 529A. It enables disabled Californians (and even non-residents) to save for disability-related expenses by putting money into tax-advantaged investments, while protecting their eligibility for means-tested public benefits programs. *See* Frequently Asked Questions, https://www.calable.ca.gov/faq (visited July 7, 2022). Individuals whose disability occurred before age 26 are eligible to use CalABLE accounts. *See id.* Eligible individuals can deposit up to $16,000 per year into a CalABLE account, and earnings and withdrawals receive tax-free treatment if they are used for "qualified disability expenses," ranging from education, housing, transportation, supported employment, health care services, assistive technology, and personal support, among other qualified expenses. *See id.* CalABLE accounts have a low annual flat fee of $37, and low administrative fees for things like paper statements, electronic funds transfers, etc. *See id.* The Plan is managed by TIAA-CREF Tuition Financing, Inc. *See* https://www.calable.ca.gov/documents/calable-infoguide.pdf (visited July 7, 2022).

Given the amount of the net settlement proceeds in this case of $15,000, the creation of a special needs trust is not a viable option.[28] After consulting with an estate planning attorney, undersigned counsel for the Plaintiff has determined that the estimated initial cost of setting up a trust is between $5,000 and $7,000 in legal fees to pursue the state court procedure for approval in probate court. *See* Dudukgian Decl. at ¶16. Beyond these up-front costs, there would be yearly court costs and legal fees for the accountings,

---

[28] Special needs trusts are governed by California Probate Code § 3604(b).

and a trustee would be entitled to fees as well. *See id.* These costs would eat up a substantial portion of the Plaintiff's settlement proceeds, which would better be used on paying for "qualified disability expenses" through a CalABLE account, instead of paying an attorney and trustee.

Depositing the money into a blocked account is also not appropriate, given that Plaintiff is only 10 years old and is expected to have on-going disability-related expenses – such as for purchasing or replacing assistive technology and durable medical equipment, educational services, habilitative services, and personal support – until she reaches the age of majority. It would be extremely cumbersome for Plaintiff's parents to have to seek the Court's approval every time they seek to make a withdrawal from the blocked account.

## **CONCLUSION**

For the foregoing reasons, the parties jointly and respectfully request that the Court approve the proposed Agreement as fair, reasonable, and in the best interests of the Plaintiff, and approve the distribution of the settlement funds as proposed herein.

DATED: August 22, 2022     CALIFORNIA JUSTICE PROJECT
                                           Attorneys for Plaintiff

                                           By: /s/ Goriune Dudukgian
                                                 Goriune Dudukgian, SBN 218714

DATED: August 22, 2022     FAGEN FRIEDMAN & FULFROST, LLP
                                           Attorneys for Defendant

                                           By: /s/ David Salazar (as authorized on 8/20/22)
                                                 David Salazar, SBN 310949
                                                 Angela Gordon, SBN 219790