# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.G.P.,<br><br>    Plaintiff,<br><br>    v.<br><br>TEHACHAPI UNIFIED SCHOOL DISTRICT,<br><br>    Defendant. | Case No. 1:22-cv-01066-ADA-BAK<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PETITION FOR APPROVAL OF MINOR'S COMPROMISE<br><br>ORDER VACATING SEPTEMBER 28, 2022 HEARING<br><br>(ECF Nos. 1, 9) |

**I.**

**INTRODUCTION**

Currently before the Court is the parties' ("Petitioners") joint petition ("Petition") for approval of a minor's compromise, filed on August 22, 2022. (ECF No. 1.) Plaintiff S.G.P. brings this action through her parent and guardian ad litem, Clarissa Parks ("Parks"). The matter is before the assigned Magistrate Judge for the issuance of findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Rule 302. The Court finds this matter suitable for decision without oral argument and the September 28, 2022 hearing shall be vacated. See Local Rule 230(g). The Court, having reviewed the petition, the declarations and exhibits attached thereto, and the Court's record, recommends the petition for compromise of the minor's claims should be granted.

1

## II.

## BACKGROUND

On August 22, 2022, Plaintiff instituted this action by filing a petition for a minor's compromise of "claims arising under the Individuals with Disabilities Education Act ("IDEA"), the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and any other known or unknown claims arising out of Plaintiff's educational program." (Pet. Approv. Minor's Compr. ("Pet.") at 1-2, ECF No. 1.)

On August 24, 2022, Defendant Tehachapi Unified School District ("TUSD") made an appearance in this action. (ECF No. 5.) On August 24, 2022, Plaintiff filed a motion to appoint a guardian ad litem, and on August 25, 2022, the Court granted the motion and appointed Clarissa Parks as guardian ad litem. (ECF Nos. 6, 8.) This action was initially assigned to District Judge Dale A. Drozd, however, on August 24, 2022, was reassigned to District Judge Ana de Alba. (ECF No. 7.) The Court found it appropriate to construe the Petition both as a complaint and as a petition for compromise of the minor's settlement. See P.R. by & through Rice v. Fresno Unified Sch. Dist., No. 119CV00220DADBAM, 2019 WL 1651267, at *1 (E.D. Cal. Apr. 17, 2019). The Court also found it appropriate to set the matter for hearing before the assigned Magistrate Judge for the preparation of findings and recommendations, and on August 25, 2022, set this matter for hearing on September 28, 2022, at 10:30 a.m., in Courtroom 9. (ECF No. 9.)[1] Through this order, the Court shall vacate the September 28, 2022 hearing.

## III.

## LEGAL STANDARD

"District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." Robidoux v. Rosengren, 638 F.3d 1177, 1181 (9th Cir. 2011). "In the context of proposed settlements in suits involving minor plaintiffs,

---

[1] Although Judge de Alba's standing order did not specify as to whether a petition for minor's compromise should be set before the District Judge or the Magistrate Judge, Judge Dale A. Drozd's amended standing order in light of ongoing judicial emergency in the Eastern District of California, specified such motions should be heard by the assigned Magistrate Judge for the preparation of findings and recommendations. The assigned Magistrate Judge found it appropriate to set such motion before the Magistrate Judge unless there was a further order from the District Judge. (ECF No. 9.)

2

this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" Robidoux, 638 F.3d at 1181 (quoting Dacanay v. Mendoza, 573 F.2d 1075, 1080 (9th Cir. 1978)).

The Local Rules for this district provide that "[n]o claim by or against a minor . . . may be settled or compromised absent an order by the Court approving the settlement or compromise." L.R. 202(b). "In actions in which the minor . . . is represented by an appointed representative pursuant to appropriate state law, excepting only those actions in which the United States courts have exclusive jurisdiction, the settlement or compromise shall first be approved by the state court having jurisdiction over the personal representative." L.R. 202(b)(1). In all other actions, the motion for approval of a proposed settlement shall be filed pursuant to Local Rule 230, and must disclose, among other things, the following:

> the age and sex of the minor or incompetent, the nature of the causes of action to be settled or compromised, the facts and circumstances out of which the causes of action arose, including the time, place and persons involved, the manner in which the compromise amount or other consideration was determined, including such additional information as may be required to enable the Court to determine the fairness of the settlement or compromise, and, if a personal injury claim, the nature and extent of the injury with sufficient particularity to inform the Court whether the injury is temporary or permanent. If reports of physicians or other similar experts have been prepared, such reports shall be provided to the Court. The Court may also require the filing of experts' reports when none have previously been prepared or additional experts' reports if appropriate under the circumstances. Reports protected by an evidentiary privilege may be submitted in a sealed condition to be reviewed only by the Court in camera, with notice of such submission to all parties.

L.R. 202(b)(2).

"When the minor or incompetent is represented by an attorney, it shall be disclosed to the Court by whom and the terms under which the attorney was employed; whether the attorney became involved in the application at the instance of the party against whom the causes of action are asserted, directly or indirectly; whether the attorney stands in any relationship to that party; and whether the attorney has received or expects to receive any compensation, from whom, and the amount." L.R. 202(c). "Upon the hearing of the application, the representative compromising the claim on behalf of the minor or incompetent, and the minor or incompetent shall be in attendance unless, for good cause shown, the Court excuses their personal

attendance." L.R. 202(d).

In <u>Robidoux</u>, the Ninth Circuit cautioned that the typical practice of applying state law and local rules governing the award of attorneys' fees "places undue emphasis on the amount of attorney's fees provided for in settlement, instead of focusing on the net recovery of the minor plaintiffs under the proposed agreement." 638 F.3d at 1181. District courts should thus "limit the scope of their review to the question [of] whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." <u>Id.</u> at 1181-82. "Most importantly, the district court should evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel— whose interests the district court has no special duty to safeguard." <u>Id.</u>; <u>but</u> <u>see</u> <u>A.G.A. v. Cty. of Riverside</u>, No. EDCV1900077VAPSPX, 2019 WL 2871160, at *2 (C.D. Cal. Apr. 26, 2019) ("Some courts have read <u>Robidoux</u> to suggest it is improper to evaluate the reasonableness of attorneys' fees provisions in proposed settlement agreements of minors' claims . . . The Court declines to adopt this approach.").[2]

The holding of <u>Robidoux</u> was expressly "limited to cases involving the settlement of a minor's federal claims," and the Circuit did "not express a view on the proper approach for a federal court to use when sitting in diversity and approving the settlement of a minor's state law claims." 638 F.3d at 1179 n.2. Some district courts have extended the application to state law

---

[2] In <u>A.G.A.</u>, the court noted the action had "a key distinguishing feature from the facts presented in <u>Robidoux</u> [where] the district court had denied in part the parties' motion to approve the proposed settlement, which included as a material term that plaintiffs' counsel would recover approximately 56% of the settlement amount as attorneys' fees . . . The Ninth Circuit found the district court abused its discretion in denying in part the motion based on the amount of attorneys' fees alone because it placed 'undue emphasis on the amount of attorneys' fees provided for in [the] settlement.' " 2019 WL 2871160, at *3 (quoting <u>Robidoux</u>, 638 F.3d at 1181). The <u>A.G.A.</u> court found that in contrast, the attorneys' fees at issue were not a material term of the settlement agreement, there was no express provision for attorneys' fees, and in approving the settlement, the court thus only considered whether the net amount distributed to each plaintiff was fair and reasonable in light of the facts of the case, the minors' specific claims, and recover in similar cases, as required by <u>Robidoux</u>. 2019 WL 2871160, at *3. The court found the "amount of attorneys' fees at issue here is an independent matter, the obligation arising from the retainer agreements between Plaintiffs and their counsel," and would evaluate the request in light of the special duty to safeguard the interests of the minor litigants, as well as the local rule requiring the court to fix the amount of attorneys' fees in an action involving a minor. <u>Id.</u> The court applied California law to evaluate the request for attorneys' fees pursuant to the local rule, and in line with other district courts throughout California. <u>Id.</u> (citations omitted). The court reduced the attorneys' fees from 33% to 25% of the settlement fund. <u>Id.</u> at *4.

4

claims.  See Calderon v. United States, No. 1:17-CV-00040-BAM, 2020 WL 3293066, at *3 (E.D. Cal. June 18, 2020) (noting that although Robidoux "expressly limited its holding to cases involving settlement of a minor's federal claims . . . district courts also have applied this rule in the context of a minor's state law claims.") (citations omitted); A.G.A., 2019 WL 2871160, at *2 n.1 ("The Ninth Circuit did not express a view on the proper approach for a federal court to use when sitting in diversity and approving the settlement of a minor's state law claims . . . however, the Court has federal question jurisdiction and is exercising supplemental jurisdiction over Plaintiffs' state law claims . . . as the case 'involves' the settlement of Plaintiffs' federal claims, the Court applies the Robidoux standard to the entire settlement.").

## IV.

## DISCUSSION

Plaintiff seeks to compromise known and unknown claims under: (1) the Individuals with Disabilities Education Act ("IDEA"); (2) the Americans with Disabilities Act ("ADA"); (3) Section 504 of the Rehabilitation Act of 1973 ("Section 504"); and (4) any other known or unknown claims arising out of Plaintiff's educational program.  (Pet. 2.)  Thus, the Court will apply the Robidoux standard when reviewing the settlement.  See, e.g., Est. of Sauceda v. City of N. Las Vegas, No. 211CV02116GMNNJK, 2020 WL 1982288, at *3 n.3 (D. Nev. Apr. 15, 2020) ("The Ninth Circuit has made clear that its standards apply in federal question cases.").

### A.     The Petition Satisfies the Requirements of the Local Rule

Upon review of the Petition, the Court finds the Petitioners have sufficiently set forth the information required under Local Rule 202.  See Hughey v. Camacho, No. 2:13-CV-02665-TLN-AC, 2019 WL 1208987, at *3 (E.D. Cal. Mar. 14, 2019) ("Plaintiffs have met the procedural requirements of Local Rule 202(b)(2) . . . Plaintiffs have identified the Minor, G.H., as a six-year-old male; and have identified the claims to be settled in the pending action, all relevant background facts, and the manner in which the proposed settlement was determined.").  The Court shall now summarize the information that was presented in compliance with the Local Rule.

/ / /

1. The Minor

The Petition identifies the minor Plaintiff as 10 years old, however, as of the date of this findings and recommendations, she is now 11 years old. (Pet. 2.) Plaintiff resides with her parents (the "Parents"), in Tehachapi, California, within the boundaries of the Eastern District of California, and within the area of the Defendant school district. Plaintiff has been diagnosed with Rett Syndrome, a rare genetic neurological disorder which occurs almost exclusively in girls, and leads to severe impairments, including the loss of functional use of the hands, slowed brain and head growth, loss of mobility, breathing irregularities, seizures, and intellectual disability. (Id.) Petitioners proffer that apraxia, the inability to perform a voluntary motor movement despite having the cognitive intent, is perhaps the most severely disabling feature of Rett syndrome, interfering with all body movements, including speech. (Pet. 2-3.) Rett syndrome is not a degenerative disorder, and barring illness or complications, children diagnosed with Rett syndrome are expected to survive into childhood. (Pet. 3.) As a result of apraxia, Plaintiff is unable to fee herself, stand unsupported, walk, dress, or independently meet any of her personal care needs. (Id.) Plaintiff does not have the ability to speak, and is nonverbal. However, according to treating doctors, Plaintiff's condition is now stabilized, and she is expected to make progress in reacquiring some of her delayed skills, including communication skills.

The Petitioners submit that Plaintiff has been eligible at all relevant times to receive special education and related services under the IDEA, under the eligibility categories of "Multiple Disability" and "Orthopedic Impairment." Plaintiff is currently placed in a special day class ("SDC") for students with moderate to severe disabilities. (Id.)

2. Disclosure of Attorney Interest

The Court finds the Petition satisfies the requirements of Local Rule 202(c), pertaining to disclosure of attorneys' interests. Specifically, the Petition specifies that Plaintiff is represented by Goriune Dudukgian of the California Justice Project in both the Special Education Action and the Civil Action; that Mr. Dudukgian was contacted and retained directly by Parents, who were previously clients in another matter in 2018; that Mr. Dudukgian did not become involved in

1  these cases, either directly or indirectly, at the instance of any party against whom the causes of
2  action are asserted; that Mr. Dudukgian is not related to any party in this case; that Mr.
3  Dudukgian has not received any compensation, to date, from Parents or from any other source
4  for services rendered in relation to the Special Education Action or the Civil Action; and that Mr.
5  Dudukgian does not expect to receive any compensation for these matters other than what is
6  specified in the settlement agreement.  (Pet. 9-10; Decl. Goriune Dudukgian Supp. Pet.
7  ("Dudukgian Decl.") ¶¶ 1-17, ECF No. 1-3 at 1-6.)

8        3.      <u>The Petition Describes the Causes of Action to be Settled</u>

9  On March 1, 2022, Parents filed a request for a due process hearing against TUSD with
10 the California Office of Administrative Hearings ("OAH") (the "Special Education Action").
11 (Pet. 3; Ex. 1, ECF No. 1-3 at 7-22.)  The Parents alleged that TUSD had failed to provide
12 Plaintiff a free appropriate public education ("FAPE") during the two years preceding the
13 complaint, as a result of alleged violations of the IDEA.  These allegations are summarized in the
14 Petition as follows:

15     1.    TUSD denied Plaintiff a FAPE during the COVID-related school closures during
16 the 2019-2020 and 2020-2021 school years by failing to develop and offer service delivery
17 options that were appropriately tailored to Plaintiff's individual needs and designed to ensure
18 equitable and meaningful access to the distance learning opportunities that the District was
19 providing to its non-disabled students.

20     2.    TUSD denied Plaintiff a FAPE in the two years prior to the filing of the Special
21 Education Act by materially failing to implement her operative Individualized Education
22 Programs ("IEP").

23     3.    TUSD denied Plaintiff a FAPE by failing to review Plaintiff's IEP at the times
24 and intervals required under the IDEA.

25     4.    TUSD denied Plaintiff a FAPE during the 2020-2021 and 2021-2022 school years
26 by failing to offer IEPs that were reasonably calculated to enable Plaintiff to make progress
27 appropriate in light of her circumstances.

28     5.    TUSD denied Plaintiff a FAPE by failing to make clear offers in the August 31,

7

1  2020 and August 31, 2021 IEPs. (Pet. 4.)

2  During this time, Parents, through counsel, also notified TUSD of their intention to pursue civil claims for damages on behalf of Plaintiff for alleged violations of the ADA and Section 504 (the "Civil Action"). (Pet. 4; Dudukgian Decl. ¶ 7.) Specifically, Parents alleged TUSD had violated the ADA's "effective communication" requirements by failing to provide Plaintiff with a working communication device during the 2020-2021 school year, and by failing to consistently use the device during the 2021-2022 school year.[3] (Pet. 5.) Parents further alleged TUSD violated the ADA and Section 504 by failing to provide Plaintiff with necessary services, accommodations, and supports during distance learning – including but not limited to an in-person aide – and thus denying Plaintiff an equal opportunity to participate in and enjoy the benefits of TUSD's services, programs, and activities, and meaningful access to the benefits of a public education.[4]

TUSD disputes Plaintiff's claims in both the Special Education Action and Civil Action. (Pet. 6.) At an OAH mediation held on April 6, 2022, the parties began negotiating a global settlement of all claims, in an effort to avoid litigation. A settlement was not reached, however, the parties continued to negotiate in good faith. (Pet. 6.) A claims representative from Self-

---

[3] The Petition cites to 28 C.F.R. 35.260, however, the relevant regulation appears to be Section 35.160. Under the regulations implementing Title II of the ADA, governmental entities must "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). This includes the duty to "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." Id. at § 35.160(b)(1).

[4] Petitioners highlight that Section 504 provides, in pertinent part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Further, Title II of the ADA similarly provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Petitioners correctly note that although there are some minor differences between Section 504 and the ADA, "the elements of a valid Title II claim do not differ in any material sense from those of a valid section 504 claim and the two may be addressed together." A.G. v. Paradise Valley Unified Sch. Dist. No. 69, 815 F.3d 1195, 1204 (9th Cir. 2016). The Ninth Circuit stated that the focus of Section 504 is "whether disabled persons were denied meaningful access to state-provided services," and while Section 504 does not require substantial adjustments in existing programs beyond those necessary to eliminate discrimination against otherwise qualified individuals," both statutes require "*reasonable* modifications necessary to correct for instances in which qualified disabled people are prevented from enjoying 'meaningful access' to a benefit because of their disability." Mark H. v. Lemahieu, 513 F.3d 922, 937 (9th Cir. 2008) (emphasis in original) (citations omitted).

8

Insured Schools of California ("SISC") was also involved in the negotiations, and the negotiations took approximately 2.5 months.

The parties entered into a Final Settlement Agreement and Release (the "Agreement"), resolving all of Plaintiff's claims, contingent on: (1) approval of the Agreement by TUSD's governing board; and (2) this Court's approval of the minor's compromise. (Pet. 6; Agreement ¶ 8.)

The Court now turns to determine whether the amount of the net settlement to the minor is fair and reasonable, in light of the claims to be settled.

**B.     The Terms and Amount of Settlement are Fair and Reasonable**

For the reasons explained below, the Court finds the "net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." Robidoux, 638 F.3d at 1181-82.

The Agreement fully resolves all known and unknown claims arising from or related to Plaintiff's educational program through June 28, 2022, in exchange for the following settlement terms:

1.     TUSD will pay Plaintiff damages in the amount of $15,000, subject to and payable consistent with this Court's approval of the minor's compromise.

2.     TUSD will fund speech and language and augmentative and alternative communication ("AAC") assessments of Plaintiff, to be conducted by a non-public agency ("NPA") selected by Parents. The proffered monetary value of this settlement term is approximately $2,750.[13]

3.     TUSD will fund up to 25 hours of training of all District staff who work with Plaintiff, as well as training for Parents, on setting up and using Plaintiff's AAC device. This training will be provided by an NPA selected by Parents at a rate not to exceed $150 per hour. All staff who work with Plaintiff will be required to attend the training. The proffered monetary value of this settlement term is $3,750.

4.     TUSD will fund a bank of 100 hours of compensatory education services for Plaintiff to be provided by an NPA selected by Parents. The proffered monetary value of this

9

1  settlement term is between $10,000 and $16,750, depending on the type of compensatory
2  services accessed by Plaintiff.

3        5.    TUSD will amend Student's IEP to provide at least 50 minutes of mainstreaming
4  time per day, outside of lunch, recess, or P.E. The monetary value of this settlement term is
5  proffered to not be quantifiable. However, the Petitioners submit that this was one of the most
6  important aspects of the settlement for Parents, because it will ensure that Plaintiff is included
7  with her nondisabled peers for a greater part of the school day moving forward.

8        6.    TUSD will contract with a mutually agreeable NPA to provide Plaintiff with aide
9  support during school days, at a rate not to exceed $85 per hour. In addition, TUSD will contract
10 with the NPA to provide 20 hours per year of behavior supervision services. These NPA aide
11 and supervision services funded will be provided to Plaintiff for a minimum period of two years,
12 in lieu of the aide support and supervision services that were previously provided to Plaintiff
13 through her IEP. The proffered monetary value of this settlement term is approximately
14 $216,000.[5]

15       7.    TUSD will reimburse Plaintiff's attorneys' fees in the amount of $25,000 for the
16 Special Education Action, and will pay up to an additional $5,000 for attorney's fees and costs
17 incurred in obtaining approval of the minor's compromise. Petitioners proffer these attorneys'
18 fees were negotiated separately by the parties and will not be deducted from Plaintiff's award.
19 (Pet. 6-9; Dudukgian Decl. ¶14.)

20       The parties jointly recommend approval of the proposed settlement as fair, reasonable.,
21 and in the best interests of the minor Plaintiff. (Pet. 11.) The parties proffer that the total
22 monetary vale of the proposed settlement to Plaintiff, excluding the attorneys' fees, is
23 substantial, totaling more than $245,000. (Id.) This includes the payment of $15,000 in damages
24 for settlement of the Civil Action; and the funding of various assessments, services, staff
25 training, compensatory education, along with the amendment of Plaintiff's IEP to provide for

---

[5] Petitioner's submit that Plaintiff's IEP provides for 377 minutes per day, or approximately 31 hours per week, of aide services (called "intensive individualized services" in the IEP). Given a 40-week school year, this equates to 2,480 hours of NPA aide services, at a maximum cost of $210,800, that will be provided to Plaintiff under the Agreement. Given a typical hourly rate of $130 for behavior supervision services, that is an additional $5,200 in services that will be funded for Plaintiff's benefit under the Agreement. (Pet. 8 n.19.)

additional mainstreaming opportunities, for settlement of the Special Education Action.  (Id.) The parties have directed the Court to caselaw that demonstrates the fairness of the proposed settlement.

First, in I.H., the court approved a minor's compromise of claims arising under the IDEA, ADA, and Section 504 that provided for a net payment of $20,000 to the student, along with "420 hours of individual reading instruction, 120 hours of individual writing instruction, 125 hours of individual math instruction, 25 hours of individual study skills counseling, and 35 hours of individual speech and language services." I. H. v. Oxnard Sch. Dist., No. CV191997MWFMRWX, 2021 WL 4771800, at *1 (C.D. Cal. Apr. 13, 2021).  Petitioners note that, as in this case, the settlement in I.H. provided for these educational services (except for the speech and language services) to be delivered by NPAs.  See Id. ("Speech and language services will be provided by a District employee, and all other services will be provided by certified private 'nonpublic agencies.' ").

Second, in J.S., the parties reached a settlement, prior to litigation, in a case involving both IDEA and damages claims by a minor student against a County Office of Education and local school district.  J.S. v. Santa Clara Cnty. Off. of Educ., No. 19-CV-06668-VKD, 2019 WL 7020321 (N.D. Cal. Dec. 20, 2019).  There, the IDEA claim alleged that the defendants had denied a FAPE "during the 2018-2019 school year by, among other things, failing to provide J.S. with a timely educational placement or to offer placement in the least restrictive environment; to timely convene an [IEP] team meeting, or to implement his IEP; to offer adequate goals, services and assistive technology; to conduct a behavioral assessment; and to make a clear written offer." Id. at *1.  The student's tort claim sought "damages arising from a January 31, 2019 incident in which an SCCOE employee allegedly verbally and physically assaulted J.S." Id.  Had the parties not settled, the student also intended to assert additional claims under the ADA, Section 504, the California Unruh Civil Rights Act, and claims under the Fourth, Eight, and Fourteenth Amendments.  Id.  The court approved a settlement which provided a net payment of $12,500 to the plaintiff, of which $5,500 "intended to settle the tort claim" and the remainder was "intended to cover J.S.'s qualified educational expenses until those funds are depleted, or through June 30,

11

1  2021, whichever occurs first." Id. at *2. The court found that the settlement was "fair, reasonable and proper" and "commensurate with settlements approved in similar cases." Id. The court also recognized that there was "some value in the parties' early resolution of this matter, without incurring the additional time and expense of potentially protracted litigation in which the nature and extent of J.S.'s claimed injuries likely would have been challenged by SCCOE and the District." Id.

In C.F., the court approved a minor student's settlement of IDEA claims after the school district deemed the student ineligible to receive special education services, a net payment of $10,000 to the student for obtaining educational services. C.F. v. San Lorenzo Unified Sch. Dist., No. 16-CV-01852-RS, 2016 WL 4521857, at *2 (N.D. Cal. Aug. 29, 2016) ("$10,000 of the total fund will go to provide C.F. with educational services. Plaintiffs and their counsel entered into a written fee agreement and agreed the attorneys will receive $55,000 of the $65,000 fund.").

In R.Q., the court approved a minor's compromise in a case involving TUSD. R.Q. v. Tehachapi Unified Sch. Dist., No. 116CV01485NONEJLT, 2020 WL 5940168 (E.D. Cal. Oct. 7, 2020), report and recommendation adopted, No. 116CV01485NONEJLT, 2020 WL 6318223 (E.D. Cal. Oct. 28, 2020). There, the student had appealed an ALJ's decision in the underlying due process case, and also sought "damages related to [TUSD's] refusal to draft a Behavior Intervention Plan to address the boy's behavior that interfered with his ability to access his education." Id. at *2. In the proposed settlement, TUSD agreed to pay $34,000 "represent[ing] 12 hours of compensatory education for the child," with $4,000 of that amount going to the parent for reimbursement for costs incurred during the time the child did not attend school, and the balance going to an ABLE account "as compensation for harm suffered by the boy." Id. The court noted "that the child has been receiving his schooling in New York for at least a year . . . so it is not possible for the District to provide him compensatory education services [and that] the attorney and the boy's parent agree that the settlement reflects the maximum the child could recover." Id. Also, $100,000 went to attorneys' fees. Id.

Petitioners also direct the Court to decisions generally involving civil rights claims for

12

1  damages against school districts, in the Eastern District of California.  See P.H. v. Tehachapi
2  Unified School District, 2018 U.S. Dist. LEXIS 11671 (E.D. Cal. Jan. 23, 2018) (net payment of
3  $21,250); T.L. by & through Layne v. S. Kern Unified Sch. Dist., No. 117CV01686LJOJLT,
4  2019 WL 3072583, at *3 (E.D. Cal. July 15, 2019) (net settlement of $24,750, with attorneys'
5  fees in excess of $150,000), report and recommendation adopted, No. 117CV01686LJOJLT,
6  2019 WL 3459151 (E.D. Cal. July 31, 2019); S.V. by & through Valencia v. Delano Union
7  Elementary Sch. Dist., No. 117CV00780LJOJLT, 2019 WL 2635949, at *3 (E.D. Cal. June 27,
8  2019) (net settlement of $25,713.53), report and recommendation adopted, No.
9  117CV00780LJOJLT, 2019 WL 3253969 (E.D. Cal. July 19, 2019); K.B. v. City of Visalia, No.
10 115CV01907AWIEPG, 2016 WL 5415668, at *4 (E.D. Cal. Sept. 27, 2016) (net settlement of
11 $11,685.15).

12     Petitioners further state that it is important to note that each of these settlements were
13 approved before the Supreme Court's recent decision in Cummings v. Premier Rehab Keller,
14 P.L.L.C., 142 S. Ct. 1562, 1571-76 (2022), which the parties proffer stands for the holding that
15 emotional distress and other types of non-economic damages that are not compensable in
16 contract actions are not recoverable under Section 504.  (Pet. 14.)  The Petitioners submit that the
17 decision reduces the expected value of Plaintiff's damages claims, because her injuries were
18 primarily mental and emotional and, if the case was litigated, TUSD would likely contest the
19 nature, extent, and causation of Plaintiff's injuries.

20     As a final consideration, Petitioners note the early resolution of this case also benefits
21 Plaintiff, as rather than having to wait a year or two for her causes of action to be litigated, the
22 settlement funds will be immediately available to Plaintiff, which will enable her to access vital
23 educational assessments and services.  Plaintiff will also begin receiving an additional 50
24 minutes per day of mainstreaming time at the start of the 2022-2023 school year, which is well
25 before a decision from OAH would be expected if the parties were to litigate the Special
26 Education Action, and as a result of early resolution, the parties have not yet incurred significant
27 costs in this case, thereby allowing for a greater award to Plaintiff.

28     The Court finds the net amount to be distributed is fair and reasonable in consideration of

the facts of the case, the specific claims, and recovery in similar cases.  See I. H. v. Oxnard Sch. Dist., 2021 WL 4771800, at *1; J.S. v. Santa Clara Cnty. Off. of Educ., 2019 WL 7020321; C.F. v. San Lorenzo Unified Sch. Dist., 2016 WL 4521857, at *2; R.Q. v. Tehachapi Unified Sch. Dist., 2020 WL 5940168.

The Court now turns to consider the proffered manner of distribution of the settlement funds.

### C. The Manner of Distribution of the Settlement Funds is Reasonable

In light of Plaintiff's disability and familial economic factors, she is currently on several public assistance programs including Medi-Cal, and receives services through Kern Regional Center, which provides services to individuals with developmental disabilities under the auspices of the Department of Developmental Services.  Petitioners submit that it is anticipated Plaintiff will continue to receive public assistance and will remain a beneficiary of these programs even after she reaches the age of majority.

Given Plaintiff's age and disability, her net recovery in this matter, her current, ongoing, and future disability-related needs, and concerns about the discontinuation of her critical public benefits, Plaintiff, through her guardian ad litem, requests that the Court approve the disbursement of the settlement proceeds of $15,000 into a CalABLE account,[6] for use on current, ongoing, and/or future "qualified disability expenses."[7]  Petitioners submit that the California Achieving a Better Life Experience (CalABLE) Program is a State-sponsored program created under 26 U.S.C. § 529A that enables disabled individuals to save for disability-related expenses by putting money into tax-advantaged investments, while protecting their eligibility for means-

---

[6] Petitioners note that under the California Probate Code § 3611, "the court making the order or giving the judgment referred to in Section 3600 shall, upon application of counsel for the minor or person with a disability, order any one or more of the following: . . . (d) If the remaining balance of the money to be paid or delivered does not exceed twenty thousand dollars ($20,000), that all or any part of the money be held on any other conditions the court in its discretion determines to be in the best interest of the minor or person with a disability."  Cal. Prob. Code § 3611(d).

[7] "The term 'qualified disability expenses' means any expenses related to the eligible individual's blindness or disability which are made for the benefit of an eligible individual who is the designated beneficiary, including the following expenses: education, housing, transportation, employment training and support, assistive technology and personal support services, health, prevention and wellness, financial management and administrative services, legal fees, expenses for oversight and monitoring, funeral and burial expenses, and other expenses, which are approved by the Secretary under regulations and consistent with the purposes of this section."  26 U.S.C. § 529A(e)(5).

tested public benefits programs. (Pet 15-16, citing *CalABLE, Frequently Asked Questions*, https://www.calable.ca.gov/faq (last visited September 21, 2022). Petitioners proffer eligible individuals can deposit up to $16,000 per year into a CalABLE account, and earnings and withdrawals receive tax-free treatment if they are used for "qualified disability expenses," ranging from education, housing, transportation, supported employment, health care services, assistive technology, and personal support, among other qualified expenses. Id. Petitioners also proffer that CalABLE accounts have a low annual flat fee of $37, and low administrative fees for things like paper statements, electronic funds transfers, etc. Id.

Petitioners submit that given the amount of the net settlement proceeds in this case of $15,000, the creation of a special needs trust is not a viable option.[8] After consulting with an estate planning attorney, Plaintiff's counsel determined that the estimated initial cost of setting up a special needs trust is between $5,000 and $7,000 in legal fees to pursue the state court procedure for approval in probate court. (Dudukgian Decl. ¶16.) Beyond these up-front costs, there would be yearly court costs and legal fees for the accountings, and a trustee would be entitled to fees as well. (Id.) Petitioners submit these costs would take up a substantial portion of the Plaintiff's settlement proceeds, which would better be used on paying for "qualified disability expenses" through a CalABLE account, instead of paying an attorney and trustee.

Additionally, Petitioners submit that depositing the money into a blocked account is also not appropriate, given that Plaintiff is only 10 years old and is expected to have on-going disability-related expenses – such as for purchasing or replacing assistive technology and durable medical equipment, educational services, habilitative services, and personal support – until she reaches the age of majority. Petitioners contend it would be "extremely cumbersome" for Plaintiff's parents to have to seek the Court's approval every time they seek to make a withdrawal from the blocked account. (Pet. 16-17.)

---

[8] The Court notes that pursuant to California Probate Code § 3604(b), a special needs trust may be established only if the Court determines all of the following: "(1) [t]hat the minor or person with a disability has a disability that substantially impairs the individual's ability to provide for the individual's own care or custody and constitutes a substantial handicap"; "(2) [t]hat the minor or person with a disability is likely to have special needs that will not be met without the trust"; and "(3) [t]hat money to be paid to the trust does not exceed the amount that appears reasonably necessary to meet the special needs of the minor or person with a disability." Cal. Prob. Code § 3604(b)(1)-(3).

1   Based on the amount of settlement, and the Petitioner's proffered explanations as to why
2  the manner of distribution of the monetary net settlement funds into a CalABLE account is the
3  most prudent method of distributing the settlement funds to the minor, the Court finds the
4  manner of distribution to be proper and reasonable, and recommends approval.

5   **D.   Attorneys' Fees**

6   Attorneys' fees in the amount of twenty-five percent (25%) are the typical benchmark in
7  contingency cases for minors. McCue v. S. Fork Union Sch. Dist., No. 1:10-CV-00233-LJO,
8  2012 WL 2995666, at *2 (E.D. Cal. July 23, 2012) ("It has been the practice in the Eastern
9  District of California to consider 25% of the recovery as the benchmark for attorney fees in
10 contingency cases for minors, subject to a showing of good cause to exceed that rate."). Given
11 the holding in Robidoux, it may be error for this court to reject the settlement simply because the
12 Court finds that the attorney fees sought are excessive. Velez v. Bakken, No. 2:17-CV-960 WBS
13 KJN, 2019 WL 358703, at *2 n.4 (E.D. Cal. Jan. 29, 2019) (noting holding of Robidoux makes
14 reduction of fees simply for finding them to be excessive error, and additionally finding that
15 attorneys' fees amounting to 46% of the settlement, though higher than benchmark, was "not
16 excessive because of counsel's experience with similar cases, the amount of time counsel spent
17 investigating the claims, and the risk counsel took in pursuing this action on a contingency
18 basis.").

19   As noted above, TUSD will reimburse Plaintiff's attorneys' fees in the amount of
20 $25,000 for the Special Education Action, and will pay up to an additional $5,000 for attorney's
21 fees and costs incurred in obtaining approval of the minor's compromise. Petitioners proffer
22 these attorneys' fees were negotiated separately by the parties and will not be deducted from
23 Plaintiff's award. (Pet. 6-9; Dudukgian Decl. ¶14.)

24   Given the proffered value of the entirety of the settlement and not just the net monetary
25 amount, the Court finds the requested attorneys' fees to be reasonable. Specifically, the $30,000
26 is substantially less than 25% of the proffered value of the entirety of the settlement to the minor
27 Plaintiff. Thus, in consideration of the facts of the case and claims brought, the risks and costs of
28 bringing this case through more formal litigation, and the monetary value of the settlement in

16

1  total, the Court does not find the attorneys' fees excessive.  See Velez, 2019 WL 358703, at *2;
2  Robidoux, 638 F.3d at 1181.

### V.

### CONCLUSION AND RECOMMENDATION

Based on the recovery in the similar cases cited above, the facts of this case, and the minor's specific claims, the Court finds the net amount of $15,000, to be distributed to the minor through the CalABLE account, in conjunction with the non-monetary services to be provided under the terms of the settlement, to encompass a fair and reasonable settlement of this action, and recommends granting the petition for compromise of the minor's claims.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The joint petition for approval of minor's compromise (ECF No. 1), be GRANTED; and

2. The proposed settlement be APPROVED as fair and reasonable.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to this findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Further, IT IS HEREBY ORDERED that the hearing set for September 28, 2022, is VACATED.

IT IS SO ORDERED.

Dated:   **September 22, 2022**

UNITED STATES MAGISTRATE JUDGE